The first case on the call of the docket for this morning is agenda number 5, number 125005, People of the State of Illinois v. Donnell Green. For the appellant, Lucas John Walker. If you're ready, please proceed. May it please the Court. Good morning, Your Honors. My name is Lucas Walker with the State Appellate Defender's Office, and I represent Mr. Donnell Green in this appeal. Your Honors, we argue today that this Court should find that trial counsel's prior representation of the intended victim of the offense constitutes a per se conflict. Just like currently, trial counsel's prior representation of the actual victim constitutes a per se conflict. We ask this Court to find that it sits in the current first category of conflicts as it relates to victims or, alternatively, create a new category to encompass it. Your Honors, the justifications for the per se conflict rule are present in both situations. Trial counsel has a tie to a person who would benefit from an unfavorable verdict against the defendant. This results in a subliminal bias that's difficult to detect. It creates the appearance of impropriety and potentially leads to future claims of effectiveness of trial counsel. And an intended victim who's not actually harmed will benefit from an unfavorable verdict against him, just like an actual victim. In fact, sometimes the actual victim is an intended victim who was not actually harmed as in intent murder cases. For a little bit more clarity on why this rule is necessary, we can look to People v. Hernandez. In Hernandez, the defendant was charged with solicitation of murder for hire. Trial counsel in that case previously represented the actual victim of the crime who was also the intended victim who was not actually harmed. Now, there was ongoing representation found in that case, but it was tenuous. Trial counsel had not seen that former client for five years and only did not withdraw his attorney of record because that client had fled the country. Nonetheless, this court went on to find that trial counsel's prior representation of that client constituted a per se conflict and that prior or current representation constituted a per se conflict. Is there any limitation on the prior representation? In Hernandez, this court found there was no inquiry necessary to the extent or duration. We can also look to People v. Cleveland, where the court there noted that seven years prior, the attorney represented the intended or the victim of the offense during just a preliminary hearing, and that was remanded for an evidentiary hearing, which ultimately found a per se conflict. But the court in Hernandez distinguished Mickens on the basis of this continuing obligation or duty, did it not? Well, it distinguished Mickens not only on that but also on the question asked in Mickens, which was not whether there was a per se conflict. It was the failure of the trial court to inquire into a potential conflict. And this court went on afterwards and decided that prior or current representation constituted a per se conflict. And we would note the Supreme Court has found over and over again that this per se conflict rule is paramount. When confronted by the state with other questions regarding whether or not this rule should even be done away with, the state has asked, well, you know, this may provide reason for misuse of the rule, where a defendant in trial counsel may not provide disclosure of their prior relationship of the victim in order to secure a new trial upon conviction. But this court responded to that argument with, it's worth the risk, because this court understands the importance of the Sixth Amendment right to effective assistance of conflict-free counsel. And if we look to, so in Hernandez there was a per se conflict found. In this case, trial counsel previously represented the intended victim of the offense, Mr. Daniel Williams, who was not actually harmed. But here, the per se conflict rule does not protect Mr. Green. And that's because Mr. Williams was not technically the actual victim. But as even the state acknowledges in its brief, if the state were to charge Mr. Green with the attempt murder of Williams, which, based on the facts alleged at trial by the state, it could have, there would be no question there was a per se conflict. It would qualify as a per se conflict currently, and that's with no change to the underlying facts of the case or change to the relationship between trial counsel and Mr. Williams. And we don't believe that's right. It's a bit of a loophole, because as it stands, this per se conflict rule will apply, not based on the justifications of the rule or the purpose of the rule, but rather based on the discretionary charging decisions of the state. So we argue this rule is necessary to close that loophole and provide consistency to the per se conflict rule. Now, the state argues this rule is an unworkable rule. Sometimes it may be too difficult to determine or impossible to determine who the intended victim was. But those arguments should not persuade this Court. If it's impossible to determine whether there was an intended victim, there is no claim. If it's too difficult to determine whether there was an intended victim, then, by definition, there's no claim. A claim under this rule would require evidence to support it. Now, the state cites the people v. Shelton to support its argument here. But we think Shelton actually illustrates our point. In Shelton, the defendant was charged with murder and attempt murder of two unintended victims. A careful reading of Shelton shows there was an intended victim known. The defendant in that case was told, go shoot Howard. He got a couple of other gang members together and told them, let's go shoot Howard. Went to the scene of the shooting, told them, go shoot Howard. Howard wasn't shot. The question in that case was whether a jury instruction on transferred intent should be given when there's an issue of perhaps bad aim, mistaken identity, or even a generalized intent to do harm to anybody in the rival gang hangout. Well, the answer to that question is the jury instruction is given if it's unclear. But if the rule we're proposing here today were applied to Shelton, the question would be simple. Did trial counsel previously represent Howard? As in this case, the question is simple. Did trial counsel previously represent Mr. Williams? The answer to that, of course, is yes. The evidence is also very clear, convincing, and obvious. Evidence prior to trial demonstrated that Mr. Williams was the intended target of this offense. We can look to several areas to provide clarity on that. First, the state itself during jury trial proceedings, during a jury instruction conference, asked for a transferred intent instruction based on its determination that the planned and intended act was to shoot Kiko, a.k.a. Williams. It determined that based on defendant's statement to detectives. Defendant's statement to detectives showed the defendant told the detective they only went after the car that was shot at because it was Williams' car. But then he said, we saw the car, we got excited, and so that's them, that's them. The detective followed up, that's them meaning the Moes, the rival gang, and Green clarified, that's one of them, that's Kiko or Williams. We can also look to the PSI that references an offense report, presumably available prior to trial, that indicates that the unintended victim was shot and that Williams was the driver. We can also look to the state's own words. In the state's motion in limine to introduce gang evidence starting on page 256 of the common law record, it says that Daniel Williams, a.k.a. Kiko, was an intended target in this case of gang retaliation. In fact, it says, it's the state's belief, that at least one of the people in the car, Daniel Williams, was an intended target of gang retaliation. So based on the state's own words, prior to trial, the only person it felt confident saying was an intended target was Williams. So it was clear, it was obvious, it was plain. Trial counsel would simply have to look at the evidence that's laid out in discovery and pretrial proceedings and ask himself, did I previously represent that person who is so clearly the intended victim of this offense who was not the actual victim? So this is an unworkable rule. It is not too broad. The state argues it's too broad. Because in certain situations, if the intended target is a group, it will be very difficult to determine who is in the group. Have I previously represented anybody that's a member of that group? Has membership gone in and out, et cetera? And that's a fair point. But we're not arguing that this rule should extend to targeting groups. Maybe that's a different case. Maybe rules get refined. And maybe eventually a case comes up where the only evidence of intent to do harm was of a generalized intent to do harm to a group. But not this case. And cases like it, where there is evidence prior to trial, as laid out in discovery and other pretrial proceedings, of a particular intended victim of the offense that's not the actual victim, the question would be simple. Did trial counsel previously represent that person? May I ask you a question? As you indicated, this court has said in Hernandez, the justification for treating these conflicts as per se has been that the defense counsel in each case had a tie to a person or entity, either the client, employee, or previous commitments, which would benefit from an unfavorable verdict for the defendant. Could you fill out that idea? How, in this situation, would there be a benefit from an unfavorable verdict for the defendant? Sure. Cases have found, I think the ultimate case cited, too, is Sobel, that a victim will inherently benefit from a successful prosecution against the defendant accused of victimizing them. Ultimately, it's what the whole criminal justice system is based on. That's the remedy for harm. So if that isn't an inherent benefit, I'm not really sure what we're doing in criminal courts. But there's another point I'd like to make as well. This court has stated, I think it was in Hernandez as well, when it was confronting the state's argument that it may be too complex at times, et cetera, and this court said, but the only question to be asked is, did trial counsel represent the alleged victim of the offense? If the answer to that is yes, there's a per se conflict. Obviously, encompassed within a per se conflict is a benefit. So it's presumed. It's kind of a big idea. I mean, the community is benefited when a person who has, in fact, committed a crime has been brought to justice. We all benefit from that. Perhaps a closer relationship between a victim, someone who's been harmed, in this case a man who was shot. But this is a step away from that. So how, other than the fact that this other gentleman was a member of the community who was affronted by the fact that there was a shooting in this case, how is there any kind of, where's the conflict where one is benefited to the judgment of the other? Well, one thing we'd like to point out, and I believe we cite the consulate for this, is that the benefit is not limited. It can't be constrained to just financial gain. So that wouldn't have to come into play, and I don't believe there likely would be one here. So the benefit would be that some, again, a person who was accused of participating in an attempt to murder Mr. Williams was successfully prosecuted. And that is, we would argue, an inherent benefit. There is evidence also, although we're not arguing about this extending to groups, but there is evidence that trial counsel had previously represented other members of the rival gang. So things of this nature come into play. But I think we would ultimately rest our argument on the fact that there is an inherent benefit in a successful prosecution against somebody accused of attempting to murder somebody. And as we would point out again, that this court noted the only inquiry necessary in determining whether there is a per se conflict where trial counsel represented the alleged victim is did trial counsel represent that person. And it did not say, and then we do an additional analysis as to whether there is, exactly what kind of benefit was incurred. So our analysis of that is that there is a presumed benefit sufficient to sustain a per se conflict and that that should extend to intended victims as well. Now the state makes another argument. This court addressed that benefit concept in fields and said that this concept does not create a fourth exception or expand upon the three per se conflicts that are in the books now. We understand in fields, we also cite the fields for this court saying it's not necessary to consider whether or not there would be a fourth category, which is why we do argue that our initial argument is that it should just fit into the current first category as it relates to victims. So to the extent there is a benefit found as a prior representation or current representation of victims, we argue that it simply should extend to intended victims. So that would be our argument on that. And this court has not completely said it would never have a fourth category of per se conflict, although we do believe our first argument is probably the better way where it just relates to the first category that currently exists as it relates to victims. But again, that would be our argument in response to that. We do want to point out that the statement and additional argument, and that is that William's status as a potential witness would conflict with prior case law regarding per se conflicts not existing when trial counsel previously represented a potential state witness. That was the same argument brought up in Hernandez, and we would argue that this court should maintain the same stance. We're not making an argument based on Williams' status as a potential witness. This argument is limited to his status as a clear and obvious intended victim of the offense. With that, Your Honors, unless there are more questions, we would ask that this court find that per se conflict exists when trial counsel previously represents the intended victim of the offense, and we would ask this court to reverse the appellate court, reverse Mr. Green's conviction, and remand for a new trial. Thank you. Thank you, Mr. Walker. Ms. Bendick. Thank you. Good morning. May it please the Court. My name is Leah Bendick from the Illinois Attorney General's Office on behalf of the people of the state of Illinois. This court should affirm the judgment of the appellate court and hold that the existing per se conflict category for prior representation of a victim applies only to actual victims of charged crimes and not extend the category, as the defendant suggests, to intended victims who are not actual victims of charged crimes. Now, actually, this case is quite narrow because the parties agree and acknowledge several of the relevant principles. Importantly is the fact that both parties acknowledge that there is not a single precedent in Illinois that has ever applied this existing conflict category to anything but actual victims of charged crimes. And so what that means is it would necessarily be an extension, an expansion, of the rule as it currently exists if this court were to apply it to the factual situation here. So that is the key question in this case, this legal question, of whether this court wants to expand the scope of this per se conflict category. Now, opposing counsel here today and in the briefing relies very heavily on people versus Hernandez, and I would agree that is a very important and useful case for our purposes here today. Defendant acknowledges that it has that factual distinction, that the person whose prior professional association with counsel was in dispute in Hernandez, that gentleman's name is Jaime Cepeda, he was the actual victim of the charged crime of solicitation of murder for hire. And that is not true here because, again, the only charge was first-degree murder of Jimmy Lewis. That means the only actual victim of a charged crime was Lewis, even accepting for the moment the allegation that Daniel Kiko Williams was the intended victim. So why should that be the line? Again, Hernandez is the best precedent for us to look to as to why that is the appropriate boundary. And that is because, again, as already discussed here today, the people acknowledged that there had been this prior professional association between defense counsel and Jaime Cepeda, so it was clear-cut that, as existed, the per se conflict rule applied unless this court would follow the people's invitation to either abandon the rule or perhaps impose a limiting principle to evaluate what is the nature or extent of this prior representation. And this court declined to do either one, stressing again the importance of the rule and also saying we don't want to get into a factual, detailed analysis in applying the per se rule. A quote from Hernandez said, quote, the very nature of the per se rule precludes inquiry into the specific facts of this case. So this court didn't want to have to wrestle with how recently did they ever talk, how extensive was that prior representation. The whole point of the value of the per se conflict rule, as opposed to the analysis of an actual conflict of interest, is that it's a simple, indisputable thumbs up, thumbs down. And so applying that as it exists to this case, the actual victim is Jimmy Lewis. Is there any professional relationship with Lewis? No. So the per se conflict rule does not apply. If the state had charged attempted murder of Kiko Williams, then indisputably, yes, Kiko would be the actual victim of the charged crime. There could be no dispute. The defendant is attempting to expand the per se conflict to include intended victims. But because Kiko Williams is not the actual victim of a charged crime, necessarily, even as can be seen in the opponent's argument here today, to make that evaluation is the very type of detailed factual analysis this court said should not be in the per se conflict rule when discussing it in Hernandez. He's pointing to the PSI. He's pointing to a statement in the jury instruction conference, talking about evidence here, arguments there. That involves a detailed analysis of several points of the record. Now compare that to the way the conflict rule currently exists. For example, the second conflict category is for contemporaneous representation of a prosecution witness. That is not subject to dispute. You look at the transcripts. Was this person called as a witness? Yes or no. There can be no dispute. But because of the way the transferred intent doctrine operates in Illinois, it is not a simple thumbs-up, thumbs-down, easy inquiry. It is not required of the state, if they want to rely upon the transferred intent doctrine, to include that in the charging instrument. There is no requirement that there be some kind of special verdict form submitted to the jury for the jury to find, as a matter of fact, who is the intended victim. And, in fact, it's entirely appropriate for the prosecution in arguing the case to never take a definitive stance on who is the specific intended victim. As they did here, as we pointed out at pages 14 and 15 of the Applebee's brief, it's entirely appropriate for the people to say, what happened here? Well, there was gunfire at the other car. And was the group targeting Kiko, the driver? Was the group targeting the passenger, Jimmy Lewis? Or did they just have a kind of indiscriminate rivalry or intent to hurt or injure or kill a member of the rival gang? We don't need to decide that definitively under the transferred intent doctrine. It can be any of those things. And that is why, in the whole course of the trial, there never has to be a definitive stance by either the parties or the jury. That is why it is a bad candidate for inclusion within the per se conflict rule, because Hernandez stressed that the per se rule should be, quote-unquote, straightforward and simple to apply. Now, opposing counsel here is trying to acknowledge that. But he is simply saying it's easy to know whether counsel has a prior representation with Kiko Williams. That's true. That is simple and straightforward. But the part that is not simple is determining who is the intended victim if we're talking about someone who is not the actual victim of the charged crime. That is what has to entail the type of factual analysis and wading into the very details of the trial record that this court and Hernandez clarify should only be in the actual conflict situation. Now, counsel also points out that the people objected about the breadth of the rule. Now, that is true, but it's not entirely just about, you know, well, I just want to clarify that, yes, if this could potentially apply to any victim or, excuse me, any member of this rival gang, there would be a problem of over-breadth. Would that mean that anybody who had ever had a professional association with any member of this rival gang would be disqualified under this rule? That would be over-breadth. But he's, you know, opposing counsel has clarified that's not how he intends to expand the conflict category, at least not in this case. Well, let's keep in mind that this particular conflict category is already quite broad because of what was discussed in Hernandez. Because this court chose not to put any limiting principle on the extent or nature of the prior representation, the fact that prior representation is included is already quite broad, which is all the more reason that this court should be very cautious about expanding this category any further. Because after all, this results in automatic reversal, which is a quite extreme remedy. Most constitutional violations are not subject to automatic reversal. And let's also remember the flip side of this. Not only is it an extreme remedy, but to say to a defendant that you are not allowed to invoke a per se conflict in this situation does not leave him without any recourse. He can still pursue an actual conflict of interest claim. He can still pursue a more generalized ineffective assistance of counsel claim. So the importance here is what is stressed in Hernandez. This court should be very cautious in applying this rule given the extremity of the remedy that's provided. And this court should recognize that it's important that it be simple and straightforward to apply, and that it not require courts to wade into the factual details of a record to determine whether it does apply. Another point I want to make is that one reason that my opponent is arguing for the expansion of the rule as he suggests is he thinks there's some kind of negative connotation with the notion that the application of the rule would be linked to the prosecutor's choices, that somehow the fact that the prosecutor's charging decisions would determine whether or not the rule applies is somehow inappropriate. But that is not an appropriate objection. We can see that again in the second conflict category. Again, that's for contemporaneous representation of a prosecution witness. So of course the application of that category is entirely dependent on the prosecutor's choices. Did they call that witness to testify? So that's already inherent in the per se rule. That's not a reason to be concerned. And if anything, as an appellate lawyer, I would applaud a trial prosecutor who is pursuing a case and taking affirmative steps to avoid injecting a reversible error into the trial. That's a responsible thing to do. That's not an improper thing to do. So finally, for the reasons especially shown in Hernandez, we would stress that this court should keep the boundaries of this per se conflict exactly where it is now. Clarify it only applies to actual victims of charged crimes and not expand it as suggested. And if the court agrees with the people's position here, this court never has to reach what is a disputable factual question of who in this case was the intended victim. Was it Keiko Williams or not? And if this court were to reach that factual question, I only want to highlight the fact that there's one thing to be said about how, yes, maybe Keiko Williams was one potential intended victim, but what is unclear in this record here is whether he was the exclusive intended victim, the only intended victim, or were they equally happy if they hurt or killed another member of the rival gang or the passenger who did actually die. That is the point that is disputable, and that is the reason that it should not be included within the per se conflict analysis. And so if there are no further questions, we would ask that this court affirm the judgment of the appellate court. Thank you. Thank you, Ms. Pender. Mr. Walker. Your Honors, quoting from the motion to eliminate the state file, it's the people's belief that at least one of the occupants, Daniel Williams, of the other vehicle was the target of gang retaliation. It doesn't take a lot of research. It doesn't require a huge detailed analysis. For a trial counsel to see that and say, whoa, there's an intended victim here who is not the actual victim, did I have any prior association with that person. It wasn't too difficult for the state to realize it when it clearly stated the planned and intended act was to shoot Kiko based on defendant's statement to police. We're doing our best to try to constrain this to a very workable rule, and we think we're doing that. The state keeps arguing that this is too difficult to determine or impossible to determine. In cases like that, there's no claim. If it's impossible to determine, there is no claim. In cases like this going forward, where it's evident from the record prior to trial that there was an intended victim previously represented by trial counsel, the only question to be asked is, did trial counsel previously represent that person? Was that disclosed to the trial court and waived by the defendant? The same justifications are present. We're not asking for this to extend to some super detailed analysis of who was in a group, who wasn't. If the evidence isn't there, it's not there. Now, just like with current categories of conflict, if evidence comes to light later on that trial counsel indeed represented somebody who the evidence showed was an intended victim, that can be raised in a PC. It's unfortunate, but it occurs, even with current categories. But we have put forth here today a very narrow, common sense, per se conflict rule that would close the loophole, make it more consistent, and make the determination of whether the per se conflict rule applies based on the justification and purpose of the rule and not the discretionary charges decisions of the state. And that should be how it is. I mean, the appearance of impropriety here is just as bad as if it was the actual victim. Who was your trial counsel? He used to represent the guy that they're accusing you of trying to murder? Doesn't look good. Doesn't sound good, because it's not good. And this is this Court's opportunity to clarify and provide consistency to the per se conflict rule. With that, Your Honors, we would simply reiterate our request for remedy, which is a reversal of the appellate court, a reversal of Mr. Green's conviction, and a remand for new trial. Thank you for your time. One question. You didn't elect to pursue an actual conflict because apparently your counsel didn't know or hadn't investigated and didn't know that he represented this victim some years earlier. Is that correct? Well, actually, trial counsel during the evidentiary hearing, at one point he said, I didn't recall having previously represented this person until two weeks before the evidentiary hearing. But he was impeached on that. And it was shown that in his trial preparation notes, he actually wrote down that he would have fronted with Williams had he been called as a witness that he had previously represented the person. Thank you, Your Honors. Thank you, Mr. Walker. Case number 125005, People of the State of Illinois v. General Green is taken under advisement as agenda number 5. Ms. Bendick and Mr. Walker, thank you for your arguments this morning.